Next case up is 4-12-0-6-4-0, Hoiser v. Dulgar. For the appellant is William Faber. You are here, sir? Yes, I am here. And for the appellee is Eric Zueck. Thank you, counsel. We ask counsel to be here a half hour early in the unlikely event we're able to start early, but this is that event. And I want to thank you both for being here so that we are able to do so. So with that, Mr. Faber, you may proceed. May I please be quoried? Counsel? Fundamentals. The famed football coach Vince Lombardi emphasized fundamentals to have a championship team in Green Bay. The central issue presented today is about fundamentals of evidence. There are three central fundamental rules of law that apply with regard to the issue before the court. Rule number one, burden of proof. A person presenting, a party presenting a contract as the basis of a claim has the burden of proving the contract. Fundamental rule number two, authentication. Exhibits submitted in a dispositive hearing before a trial court and a bench trial must be authenticated. If they are not authenticated, they do not come into evidence and cannot be considered by the court. Rule number three, fundamental, foundation. Evidence rule 8036 describes the elements for laying a foundation for a business record such as a contract. Evidence rule 20911 speaks to certification, which is an alternative way to present a business record or a document to the court. De novo review. There is no challenge by my colleague for the FPELI with regard to our proposition that this would be a de novo review by the court if it would accept that proposition. So the issue is whether or not the trial court erred in its grant of a $5,000 set-off based on a release agreement where Dualgar, that is the defendant, and its insurance company United Equitable failed to authenticate the contract agreement, which was attached as an exhibit to their counterclaim for a set-off and in their presentation of evidence to the trial court post-trial. The contract was an exhibit B to the counterclaim, which is appendix number seven. Dualgar violated the fundamental rules that I have suggested in that, at the hearing. He did not authenticate the release. He did not lay an evidentiary foundation for the admission of the document contract release as a business record. And so the judge had no evidence before him in terms of considering that contract. No contract, no evidence, no set-off claim should be allowed. Now instead of presenting an authentication of the contract, the defendant presented an affidavit from the state farm lawyer in which it explained the underlying contract, in which he explained the underlying contract, saying that they settled the property damage claim and the medical pay claim for $5,000. But the release document was not authenticating, and the state farm affidavit did not authenticate the release document, which they could have done easily by, for example, in the affidavit saying, attached as exhibit B is a contract which was a business record kept in the normal course of business. Or they could have presented an affidavit from the signatories to the underlying release agreement. None of those were presented. Did you object at that time on that basis? I did, Your Honor. And what did the trial judge say? There was, he said nothing, Your Honor. With regard to authentication, it appears that Dulgar felt they did not need to authenticate because in the record of proceedings, the counsel for Dulgar said, I don't know. The release is the release. There is no, I don't know that, and I can't authenticate the release other than it is what was signed by the parties. So I would rely on what I submitted. That was in counter argument to my objection that the document needed to be authenticated. Your Honors, that is my fundamental argument with regard to the release, that there was no evidence, so that the burden of proof was not sustained, so the court erred in the presentation or the award of that set-off agreement. I noted in my brief, Your Honors, the unfairness of this way of doing business where the insurance company for the at-fault driver negotiated a settlement of both the property damage and the medical payments. Because you can see by the arithmetic in the settlement agreement with State Farm, they saved about $4,000 or so in their negotiation off of the submitted subrogation amounts, and then they come before the trial court to ask for an additional $5,000 set-off with regard to medical payments. So they've obtained an over $9,000 discount with regard to payment of the claim based upon a jury verdict of $25,000. So something is a little bit amiss in that presentation. I have had the opportunity to work with probably over 100 automobile claims where subrogation has been involved, and never has there been a subrogation agreement that included property damage and medical payments in that settlement agreement on a subrogation. Is it applicable here? Is it applicable here? It is not. It should not have been done. Well, then that would be an argument having nothing to do with Foundation. That's true, Your Honor. That was the second argument that I had. That argument was that under the State Farm contract, there was both subrogation and reimbursement rights. Subrogation rights that were exercised with regard to the release agreement were premature, not ripe, they were still inchoate. With regard to the property damage subrogation rights, State Farm didn't have that right vested yet because liability with regard to the medical payments had not yet been established. So it was a premature exercise of that right. So we're saying that even if the contract comes into evidence or is considered to be in evidence, State Farm did not have that right to negotiate or waive because it was not yet a vested right. It was inchoate, did not ripen until my client, the nurse, was paid money damage for the medical payment by the other side. And so that's why we're saying that really, when I was saying, when I cited the Strum v. Halverson case, what I was really trying to say to the court is that State Farm, although on paper it has an inchoate right to subrogation, that right to subrogation was not yet vested and so could not be exercised. Because when they negotiated that agreement with United Equitable, they have harmed my nurse in terms of that negotiation. How? If there had not been a settlement, supposed agreement in subrogation, at the end of the case, the jury verdict gets paid, then State Farm comes back to the nurse and says, I want reimbursement under the contract of the State Farm contract for the $5,000. But she says, wait a minute, State Farm. You owe me an attorney fee under the common fund doctrine of one third. So instead of having to pay State Farm back $5,000 on reimbursement, she would pay State Farm back $3,500 or less. So in this sense, the way this matter was negotiated prematurely, the State Farm did not have the vested rights to subrogate to the medical pay. She was harmed in that way additionally. So that was our argument with regard to the concept of the application of the subrogation right, Your Honor. The other item that we had raised in our brief was that these medical payments must be considered collateral source payments that my nurse client paid for so that she would be protected if she were harmed. So she pays for that coverage. She gets that coverage. And then the United Equitable and Dulgar take advantage of that coverage in the subrogation settlement. And she is paid the premiums. And they get the advantage of her payment of premiums, and that is unfair. So we are saying as a technicality, if they get advantage, if they get to take advantage of her medical payment. Are there any statutes that apply to this situation? With regard, well, we did suggest that this reduction in amount of recovery under the Illinois Practice Act, 735 ILCS 5-2-1205.1 applied. And it would have prevented a reduction of this jury verdict because this verdict was not, I mean, the reduction was less than $25,000. There can only be a reduction if the amount of collateral source is over $25,000. And you cannot have a reduction where there is reimbursement or lien rights, which there were with State Farm. So we were saying that that statute, if it was considered medical pay, would have prevented this set off as well. Okay, thank you, counsel. Mr. Zook, did I pronounce correctly? Yes, you did. You're on time. Of course, make yourself as comfortable as you can. Please, the floor, counsel. I guess, first of all, I would just say that as far as subrogation rights of State Farm, it's well known that when an insurance company makes payments on behalf of its insured, they step into the shoes of the insured. She submitted, and I mean she, Kimberly Hosier, submitted her medical bills to State Farm for payment. State Farm made those payments. Therefore, they bought those medical bills. They owned the right to do one of three things. They could go after Mr. Delgar personally. They could write them off completely. Or they could sit back and wait for this case to come to trial, put a lien on the file, and then collect on the back end. They chose option two, or I should say option one. They went after Mr. Delgar through his insurance company. They negotiated a settlement for both the property damage and the med pay, which the release shows was over $11,000. So they didn't buy all this for $5,000. There was property damage and medical payments in there. So I think of the original amount of $15,900 and some, they settled for $11,750 I think, somewhere in there. So yes, while United Equitable, the insurance company from Mr. Delgar, may have gotten a discount somewhere along the lines, State Farm said it's better to get their money now than to wait two, three years. Why doesn't the collateral source rule prohibit what happened here? Because the collateral source would, okay, if the defendant was arguing that he's entitled to a $5,000 set-off because of the payments made by State Farm, the collateral source rule applies. Because you cannot benefit from her taking out her own insurance and having benefit from it. Mr. Delgar had his insurance. They paid State Farm back that $5,000. It's not the collateral source rule. They're getting repayment from a third-party tortfeasor, which was Mr. Delgar. His insurance company reimbursed him for that $5,000. So I don't believe the collateral source rule applies here. Is there some statutory provision that applies? I don't believe there's a statutory provision that applies because he's calling it a reduction of the award. It's not a reduction. It's a credit. I mean, we can call it a set-off. We can call it a credit. But it's essentially a credit. If you don't allow the set-off, then the jury verdict comes in. She doesn't owe State Farm $5,000, and then she gets another $5,000 from the defendant. She gets a double recovery. She then turns a $25,000 claim into a $30,000 claim. I don't believe that. Isn't that always the argument on why the collateral source rule shouldn't apply? It may be, but she is now being harmed by this $5,000 set-off. Well, she has $5,000 less. She received her $5,000 from State Farm. They paid bills that she was owed to pay. She owed $5,000 to her medical providers. State Farm paid those $5,000. She no longer owes that $5,000. She doesn't owe it to State Farm either because they negotiated with the defendant's insurance company for repayment of that. To my knowledge, State Farm has not come after the plaintiff asking for that $5,000. In fact, the affidavit by Mr. Ullman, who was the attorney for State Farm in the subrogation action for State Farm, stated that their right of subrogation has been extinguished now because this has all been resolved between the two insurance companies. If you don't allow the two insurance companies to negotiate this way, then what happens in a case like this is you get a principal case filed, you get a secondary case filed by State Farm, the two cases are consolidated, and it just clogs the courts up. To not allow this would actually not only be a detriment to the plaintiff in this case, but all plaintiffs because now they have to fight on two fronts. Defendants have to fight on two fronts. The plaintiff would even have to fight with her own insurance company. As far as whether or not the release itself was authenticated, I guess in the affidavit, I should have put that in there, but the affidavit from the attorney himself states that there was a subrogation right for $5,000. You just throw the release out of this. Just take it completely out of the equation. The affidavit itself establishes that there was a subrogation right by State Farm,  and then in turn they sought reimbursement from the defendant's third-party insurance company, and they negotiated a settlement. To not allow the set-off would be giving the plaintiff an extra $5,000 the jury did not award. Obviously, a lot of this cannot come up in the actual trial because we can't talk about insurance. It will prejudice the jury. To be honest, I don't know if there's a jury that would understand subrogation. There's a lot of attorneys I know that don't understand it. I know I don't understand it fully. To allow that to go into the trial would just muddle the water and should not be allowed. That's why this comes after the trial, and courts all the time make adjustments off of jury verdicts for various reasons. I don't see where this should be any different from any of those. Just to make sure I understand, counsel, and I may be in the same position as the jury trying to figure this all out, using the precocious sixth-grader standard, explain to me what this $5,000 is, how things worked here, where it all came up, what happened. Okay. His client was injured. She submits her bills to State Farm for payment under her medical payments provision. And State Farm is her insurance? Her insurance company. Okay. And she submits what bills? Medical bills? Medical bills. Okay. I don't know what she submits. I think all of her medical bills, and under her policy, she has a maximum of $5,000 benefit. Okay. For medical coverage. For medical bills. Correct. So she's hurt. She submits it to her insurance company. Meanwhile, Dolgar is the guy who she claims is responsible for the accident. Correct. And there was a trial over that? Yes, there was. And the jury ultimately agrees that's right, Dolgar is responsible and awards damages to her in the sum of? $25,000. $25,000. Yes. And $9,500 of that was itemized medical expenses? Correct. Okay. And who is the insurance company for Dolgar? Well, it's United Equitable. There's two sister companies. There's United Equitable and American Heartland. Dolgar's insurance? Dolgar's insurance. Okay. So State Farm paid $5,000 under her policy for her medical expenses? Correct. Of the $9,500, $5,000 was paid by State Farm. Okay. So, meanwhile, she sues Dolgar. The jury comes up with a verdict for $25,000 of which $9,508 was medical expenses. Correct. And, meanwhile, I guess State Farm, having paid Ms. Hosier $5,000 medical expenses, they claim that Dolgar's insurance company owes them because they're subrogating her insurance claim? Is that what that's about? Correct. Is this in the same sense as if, let's say, there was property damage to her car of $3,000 and they paid that, they would be able to claim $3,000 subrogation for what they gave her to have her car fixed? Correct. Okay. So, anyway, so State, she gets this verdict, $25,000, and State Farm tells Dolgar's insurance company, give us the $5,000, we have this claim, your guy was the tortfeasor, and they pay $5,000. Dolgar's insurance company is State Farm? No, it's United Equitable. Dolgar's insurance company is American Heartland or United Equitable. State Farm is for Hosier. Yes, okay. But United Equitable reimburses State Farm the $5,000 they were out? That plus other for the property damage, rental, and all the other. Okay. But what's at issue is the $5,000? Correct, $5,000 med pay. And the argument is you shouldn't be able to do that because that was from her insurance policy, and if she gets $5,000 from them, that's of no interest to Dolgar the tortfeasor, because maybe, let's assume she didn't have insurance coverage, she's out to her own money, and why should Dolgar the tortfeasor get the benefit of her having contracted for her insurance coverage? Isn't that kind of how collateral source analysis works? Yes. If you're looking to benefit from the person who's injured, from what they have paid to protect themselves, that's not the case here. Why not? Well, and just to correct your timeline, Your Honor, the negotiations happened a year before the trial between State Farm and United Equitable. They settled the property damage and the med pay a good year before this case ever came to trial. What's the med pay? What was that about? Med pay is the $5,000 of coverage. I see. I'm sorry, I'm just using what I'm used to talking about. So that $5,000 was negotiated repayment at least a year before the trial. Okay, now pausing right there, you were just talking about how this is an important thing, because it's nice that insurance companies work this out, but how, from Ms. Hosier's point of view, the plaintiff, why does she care? Let the insurance companies work it out. I mean, she's got her claim against Dolgar. Correct. She has a claim against her own insurance company, give me $5,000 to cover my medical expenses. If the insurance companies hadn't discussed it or hadn't worked out anything, how does that affect her in any way? Well, from my experience, Your Honor, when these cases get consolidated like that, the case takes at least another six to eight months to come to trial because you involve another attorney, you involve another aspect of the case. Who is the other attorney? The attorney for State Farm as a subrogate or as a subrogore for the $5,000 med pay or for 3,500 in property damage or whatever it might be. You involve another attorney in the case. And as you may or may not know, they have five years to file a subrogation case. Okay. It's a contract case versus two years. So they can come in at the last minute and stretch the case out longer. So that's just been my experience from being on both sides as a plaintiff and a defendant that if the insurance companies can work this out before the actual personal intervention. That's desirable. Yes, very desirable. What, you know, the collateral source rule, what would it prohibit? What would it bar recovery from? Okay. Mr. Delgar has no insurance at all. Okay. All right? He hires me as his attorney. We try the case. I file the same motion and say $5,000 of hers was paid by her insurance company. We're entitled to $5,000 set off. That is the collateral source rule. That is not allowed. Because she's done that herself and you're the tort defendant. We get off. We don't pay anything. We owe zero. She paid for her $5,000 in coverage, and we get credit for that $5,000 without paying a dollar for it. But if Delgar's insurance company has reimbursed State Farm, it's different. Right. It is different. Why is that? Why it's different because Mr. Delgar paid for a benefit through his company, and his insurance company is now $5,000 poorer because they gave State Farm $5,000. It's not like they're getting a $5,000 credit for nothing. They did pay $5,000 to State Farm for their med pay, for the $5,000 of medical bills that were paid. Well, if State Farm wasn't given the $5,000 back, what would be their claim against Delgar's insurance company? If the $5,000 payment never had occurred, the verdict would come down under his policy, which is a $20,000, $40,000, $15,000 policy. United Equitable would pay $20,000, and Mr. Delgar would be responsible for the other $5,000 because he didn't have enough coverage. As it stands now, United Equitable and Mr. Delgar's company paid $5,000. The verdict came back at $25,000. $15,000 is the difference between what his insurance company should pay of the $20,000 and what they have paid, which is $5,000. So you add the $5,000 and the $15,000 together, that's $20,000 total. Mr. Delgar still owes $5,000 personally. What does Section 2-1205.1 have to do with any of this? I don't think it has anything to do with it because it's talking about a reduction of an award. It's not a reduction. Ms. Hosier's insurance company has paid $5,000. Her insurance company is not coming after her for that $5,000, so that $5,000 disappears. She doesn't owe it. It's a benefit to her. She gets what's left of the policy, which is $15,000. It would be the same result as if she did have a $5,000 payment from United Equitable to her insurance company. Then they would send her a check for $20,000. As it stands, they will send her a check for $15,000, which we did. We sent a check for $15,000, which is the difference. This section of the statute says, deduction. Deduction from the judgment. To me, a deduction applies to medicals that are over $25,000. But to me, a deduction means you're losing something. She's not losing anything. Well, a deduction is... The trial court said the amount of judgment... the damages are incorrect because of a certain element of proof that's lacking. It reduces the judgment by $5,000. That's a deduction from the judgment. Okay, I guess as far as... if you're looking at the amount of the judgment, yes, it's a reduction. But it's not a reduction of her award. She would get $25,000. That's the jury's verdict. I think we can all agree that was the verdict. The policy's for $20,000. Mr. Delgar would owe $5,000. His policy's already paid $5,000. That means there's $15,000 left of that $20,000. I guess I'm splitting hairs here. Whether it's $5,000 up front and $15,000 on the back end, or we just wait until the back end and pay all $20,000. It's still $20,000 whether you add it up at the end or you take the payment at the beginning or the year before the trial and add it to the $15,000. It's still $20,000 that his insurance company paid or will be paying to the plaintiff under his policy. But if you don't allow their set-off and you give another $5,000, then that jury verdict all of a sudden goes from $25,000 to $30,000.  So then Mr. Delgar owes another $5,000. Well, I'm not sure... You made reference to that several times, the insurance coverage. For our purposes, why does that matter? I guess it doesn't mean... For the purpose of the argument today, it doesn't, but just to make clarification of how the payments and what... Well, I'm just trying to figure out the whole idea of the collateral source rule in this context and the rest of this. It's a little bit complicated. And the question of Delgar's insurance coverage, I think, unduly complicates what's already complicated. I'm not sure that's pertinent, is it? I believe part of it is because the collateral source rule states that you can't... You can recover from a third-party tort fees. I mean, if you get into the depth of the collateral source rule in cases, Mr. Delgar was a third-party tort feeser. He, whether you were looking at him or his insurance company, paid $5,000. It wasn't... He's not asking, as I said before, he's not asking for credit for something that was paid by the state farm that he did not pay anything back for. Let me ask it this way. Maybe this will help me understand your position. The jury comes up with a $25,000 verdict. And it seems to me that you're talking about $5,000 that his insurance company paid earlier as essentially being a prejudgment payment to Hozier of $5,000 for some of the losses she had suffered earlier by medical expenses. And that instead of looking at it as if Delgar, the tort feeser, had given her $5,000 before judgment, your position seems to me to be... should be the same as if Delgar's insurance company... It's the equivalent of Delgar paying Hozier when Delgar's insurance company paid state farm, which was Hozier's insurance company, which in turn gave the money to Hozier to cover her expenses. Is that essentially what you're arguing here? That this is just... the insurance companies are a conduit between the tort feeser, Delgar, and Hozier? So that the money's been paid and she's not entitled to a second $5,000 payment? She's not. By the way, this was not a rhetorical question. Am I stating this consistently with how you view what's happened here? Yes. And I'll ask Mr. Faber about it, but he claims that isn't right because what? What is your understanding of his objection? In looking at his brief, the first claim was that state farm didn't have a subrogation right, which in his brief, he's got a copy of the policy, section 3, that says we are subrogated to the extent of our payments. So I don't know... that argument, that they're not a subrogor, that they don't have subrogation rights, to me does not apply given the policy. The plaintiff understood it or not, I don't know. She contracted with them. They had a contract with her. This was part of the contract. It says we'll pay for your payments, but we are allowed to come after the third party or against any party liable for the bodily injury, which they did. They came after Mr. Delgar. His insurance company paid them the $5,000. So as far as the subrogation rights, I don't think there's any question that state farm had a subrogation right in this case. Okay. Time's up. Thank you. Mr. Faber, rebuttal, sir? I begin right where I indicated because I'm struggling to understand all this. Had Delgar paid Holmshire $5,000 before judgment in this case and then got a $25,000 judgment against them, I guess there'd be no question about that he'd be given credit for that $5,000 and they're still just unquotable. Would that be the case? Yes. I'm hearing Mr. Zook Mr. Zook's assessment He's saying this is essentially the same thing as Delgar paying Holmshire only it went through Congress. It went through Delgar's insurance company to Holmshire's insurance company to cover Holmshire's expenses. Why isn't he right? Well, he hasn't proved that in terms of presenting his... Well, let's assume for the moment In a post-trial matter of this kind I'm not sure that this is the same kind of trial and evidentiary proof and foundation and all the rest of that. Let's assume for the moment that's not at issue. I just want to deal with the technicalities of why he's in that legitimate subrogation. Well, normally what happens with medical payment is that in this case there would be a $25,000 verdict and then State Farm would come to Ms. Hosier and say under our rights of reimbursement you owe us the $5,000 med pay that we advanced to you back. That's normally how it works. It's very unusual that there would be... Well, pausing right there, and again trust me, none of these are rhetorical in courts. I'm really trying to understand and be educated here. Let's assume none of this had happened other than State Farm gives $5,000 Hosier sues Volger gets a judgment for $25,000 and that's the judgment. The jury says it includes medical expenses. Hosier now has a check for $25,000. Would State Farm be able to say by the way, we gave you $5,000 early on before you got this judgment and we're entitled to have that reimbursed? Is that correct? Yes. So why isn't what happened here kind of the same thing? Well, because our position, Your Honor, was that State Farm's right of subrogation under the contract plus they had reimbursement rights. The right to subrogation was an inchoate right that had not yet ripened because there had been no liability as to the medical pay. What if, for example, the jury were to say the amount of medical bills that apply to this injury are $1,000, not $9,000? State Farm isn't normally going to try to negotiate something where the liability on the responsibility for the bills has not yet been determined. So it's really an unusual time. I can understand the position but here we have $5,000 paid and we have $5,000 paid to Ms. Hozier. If I may make an important point, in the release, Your Honor, they have not identified, which is the basis of their claim, they have not identified an allocation of $5,000. We don't know, in this $11,000, which is short of the amount that State Farm paid, we don't know that $5,000 includes medical pay. We do not know that that was the benefit of the bargain with State Farm because there is a shortage of almost $5,000 in their determination. Well, then let me ask it this way. Is my understanding correct that based upon your remarks now, your problem with the position of the defense isn't the fundamental theory underlying their claim but is essentially the mechanics, like they haven't made this clear, the insufficient foundation, whatever. So that, assuming for the moment, had they made it clear, by the way, this is the $5,000 we reimbursed you, etc., they'd be okay? They'd have a much stronger position, yes, Your Honor. Well, much stronger position, is that exactly my question? No, I don't think they would be okay. Why wouldn't they be okay? Because what I'm saying is the rights to subrogation that State Farm thought it was bargaining were not vested rights yet. And so they could not bargain with another insurance company for Ms. Hosier's subrogation because they did not possess them yet. But that goes back to my earlier question about Dulger because he's such a nice guy. Let's assume he pays $5,000 to Ms. Hosier before trial. And then the jury comes back and says, by the way, we're going to find you liable for $25,000. My very first question was, and you agreed, the $5,000 he paid he'd get credit for. That was in Kuwait too. He paid it just because he's a good guy. But now he's only going to have to pay 20 of the $25,000. Well, if he paid that money without saying this is in determination of my liability, if he didn't say that, if he just gratuitously gave it to her... It's a gift. So that's what this is about? Well, Your Honor, I learned about this authentication stuff from a great lawyer, Jack Horsley, who taught me real soon that when I presented an evidentiary hearing before the judge, I better authenticate my evidence. Otherwise I'm not in court. But I'm trying to figure out the technicalities of it. So apparently this is just the foundational issue? Well, I think that's my easiest argument, Your Honor. Because otherwise this gets very conceptually confused. And it's very unusual that State Farm would negotiate up front its med pay. It's never happened in my career. I've never seen it before. Well, time's up. Thank you, counsel. Thank you.